Sleeper, Appellant, v. Hickey.

*Decedent's estates—Lien on real estate—Continuance of lien—Judgment note—Act of February 24, 1834, P. L. 70.*
    A judgment note of a decedent entered in the office of the prothonotary within five years after the death of the decedent will continue the lien of the debt represented by the note for a further period of five years from the date of filing. While the effect of the entry of the note may not be to create a valid judgment, the entry is the equivalent of the filing of a

copy or written statement of the debt within the meaning of the Act of February 24, 1834, P. L. 70.

In the above case before the expiration of the five years from the date of the filing of the note, revival proceedings were instituted, and in these proceedings the terre-tenant filed a paper as follows : " And I confess judgment for said sum as I have assumed the payment of the above debt, interest and costs, and do agree to pay the same." This paper she signed as '' terre-tenant and owner of the premises that the above judgment is a lien upon." Following this confession there were several revivals of judgment. *Held,* that there was no break in the continuity of the lien from the date of the death of the decedent.

Argued Nov. 20, 1903. Appeal, No. 203, Oct. T., 1903, by plaintiff, from order of C. P. Bradford Co., May T., 1901, No. 430, dismissing exceptions to auditor's report in case of Mary L. Sleeper to use of Nancy E. Leonard v. Elizabeth Hickey and James Hickey. Before RICE, P. J., BEAVER, ORLADY, PORTER, MORRISON and HENDERSON, JJ. Affirmed.

Exceptions to report of William Maxwell, Esq.

The facts appear by the opinion of the Superior Court.

*Error assigned* was in dismissing exceptions to auditor's report.

*Rodney A. Mercur* and *J. T. Corbin,* for appellant.—It is not within the power of one heir alone to relieve a creditor from the commencement and prosecution of an action to continue a lien against the ancestor's estate, by simply consenting to the revival of an alleged judgment, which was a nullity, when she has become the owner of the entire estate : Kerper v. Hoch, 1 Watts, 9 ; Duncan v. Clark, 7 Watts, 217 ; Penn v. Hamilton, 2 Watts, 53 ; Hemphill v. Carpenter, 6 Watts, 22 : Greenough v. Patton, 7 Watts, 336 ; Seitzinger v. Fisher, 1 W. & S. 293 ; Bailey v. Bowman, 6 W. & S. 118 ; Maus v. Hummel, 11 Pa. 228 ; Smith v. Wildman, 178 Pa. 245 ; Pry's Appeal, 8 Watts, 253 ; Bredin v. Agnew, 8 Pa. 233 ; Keenan v. Gibson, 9 Pa. 249 ; Schwartz' Estate, 14 Pa. 42 ; Corrigan's Estate, 82 Pa. 495 ; Hope v. Marshall, 96 Pa. 395 ; Colwell v. Rockwell, 100 Pa. 133 ; Phillips v. Allegheny Valley Railroad Co., 107 Pa. 472.

A judgment cannot properly be entered after the death of the debtor, and if entered will be stricken off upon the fact of

death being made to appear: Leiper v. Levis, 15 S. & R. 108;
Lanning v. Pawson, 38 Pa. 480; Tobias v. Dorsey, 2 W. N. C.
15; Gordon v. Bartley, 4 W. N. C. 37; Moore v. Palmer, 1
Delaware County Rep. 57; Com. v. Joyce, 18 Pa. C. C. R.
193; Stevenson v. Virtue, 21 Pa. C. C. R. 229, affirmed on
appeal in 13 Pa. Superior Ct. 103.

*T. J. Davies*, for appellee.—Elizabeth Hickey, who owned
the entire title to this farm at the time of these amicable reviv-
als, should have a right to amicably revive a valid lien against
her property, without being compelled to suffer the expense of
an adverse proceeding to accomplish the same purpose; espe-
cially so when it was not to the prejudice, but to the benefit of
the mortgagee in this case : Speer v. Sample, 4 Watts, 367;
Lyon v. Cleveland, 170 Pa. 611; Drexel's App., 6 Pa. 272;
Buehler v. Buffington, 43 Pa. 278; Hazelett v. Ford, 10 Watts,
101; Warder v. Tainter, 4 Watts, 270; Stevenson v. Virtue,
13 Pa. Superior Ct. 103; Yaple v. Titus, 41 Pa. 195; Carr v.
Townsend, 63 Pa. 202; Lowber & Wilmer's Appeal, 8 W. & S.
387; Woods v. Irwin, 141 Pa. 278; Sherrard's Exrs. v. John-
ston, 193 Pa. 166.

A judgment cannot be inquired into collaterally in a ques-
tion of distribution, but if a party will attack it he must have
the proceedings suspended until he can test its validity :
Williams's Appeal; Moore's Est., 47 Pa. 307; Levan et al. v.
Millholland, 114 Pa. 49; Baird v. Ford, 152 Pa. 641; Mea-
son's Estate, 4 Watts, 341; Kostenbader v. Kuebler, 199 Pa.
246.

OPINION BY MORRISON, J., March 17, 1904 :

This is an appeal by Nancy E. Leonard from the decree of
the court of common pleas of Bradford county distributing
the proceeds of the sale of real estate which formerly belonged
to Adelia B. Dacy. The sole contest is between the appellant,
mortgagee of the real estate after the decease of Adelia B.
Dacy, and a creditor of Adelia B. Dacy, whose claim or debt
became a lien upon the real estate at the death of said Adelia
B. Dacy. On May 5, 1881, Adelia B. Dacy owned the land
which was sold by the sheriff, and produced the money in
court. And she died seized of this land. On April 17, 1884,

she executed and delivered to Julia Brennan a judgment note, with warrant of attorney, for $500 payable seven years after date, with interest. On September 1, 1884, Adelia B. Dacy died intestate, and no letters of administration were ever taken out on her estate. It is and of course must be conceded that at her death the debt evidenced by said note became a lien upon her estate. Elizabeth Hickey was a sister of Adelia B. Dacy and she inherited title to one sixth of the real estate sold by the sheriff, and purchased the other five sixths from the other heirs of Adelia B. Dacy. Elizabeth Hickey's title by purchase from said heirs was acquired in 1884 and 1885. Almira Noteware purchased the note in question from Julia Brennan on April 17, 1884. This note was filed in the prothonotary's office of Bradford county on March 9, 1889. The prothonotary entered judgment thereon, at that date, as if the maker were then living. Whether this judgment was void, or voidable only, is a close question. Speaking for myself alone I am of the opinion that it was not void, but illegal and irregular, and it would have been stricken off if any one directly interested either as administrator or heir had moved the court in that behalf, and the fact had been conceded or unquestionably established that the maker of the note was dead before the entry of the judgment: Stevenson v. Virtue, 13 Pa. Superior Ct. 103. But I do not seek to commit the court to the doctrine that this judgment was only voidable and could not be attacked collaterally in a distribution proceeding. The view I take of this question does not require giving this judgment any force whatever. The filing of the note in the prothonotary's office on March 9, 1899, within five years of the death of the maker of it, had the legal effect of continuing the lien of the debt evidenced by the note for the period of five years after it became due. Therefore, this debt was a valid lien upon the land in Bradford county, of which Adelia B. Dacy died seized, until April 17, 1896. The 24th section of the Act of February 24, 1834, P. L. 70, and Purdon's Digest, 12th ed. page 591, reads : " No debts of a decedent, except they be secured by mortgage or judgment, shall remain a lien upon the real estate of such decedent longer than five years after the decease of such debtor, unless an action for the recovery thereof be commenced and duly prosecuted against his

heirs, executors or administrators within the period of five years after his decease, or a copy or particular written statement of any bond, covenant, debt or demand, where the same is not payable within the said period of five years, shall be filed, within the said period of five years, in the office of the prothonotary of the county where the real estate to be charged is situate, and then to be a lien only for the period of five years after said bond, covenant, debt or demand, becomes due."

It is true that a copy of this note was not filed in the prothonotary's office, but the original note was filed on March 9, 1889, and it would be sticking in the bark to hold that the act of 1834 was not complied with by filing the original note instead of a copy. All that is required by the act is to file the copy or a written statement in the office of the prothonotary. It then becomes the duty of any one interested to make inquiry at the prothonotary's office, and of course all parties are visited with constructive notice where the note or other written obligation has been filed within the time prescribed by the act of 1834. Conceding that the prothonotary had no legal right to enter a judgment upon this note, after the death of the maker, it then stands as filed in the prothonotary's office, and all that he did thereafter may go for naught. Let the entry of the judgment be blotted out and still the note remained filed in the office in accordance with the act of 1834.

The Mary L. Sleeper mortgage was not executed and delivered by Elizabeth Hickey and her husband until August 3, 1889, and, therefore, it is perfectly clear that from then until April 17, 1896, the lien of the debt evidenced by said note was prior to the lien of the mortgage. On January 2, 1894, Almira Noteware and Elizabeth Dacy Hickey attempted to revive the judgment which the prothonotary had entered upon said note on March 9, 1889. Whether the record then made had the effect of reviving and continuing the lien of that judgment is not of vital importance because Elizabeth Dacy Hickey appeared in the prothonotary's office and after attempting to revive and continue the lien of said judgment she went further and said : " And I confess judgment for said sum as I have assumed the payment of the above debt, interest and costs, and do agree to pay the same." The record then made clearly shows that she referred to the debt evidenced by the Adelia B.

Dacy note.   This confession was executed as follows : " Signed and sealed by Elizabeth Dacy, terre tenant and owner of the premises that the above judgment is a lien upon."

Now let it be noted that Elizabeth Dacy Hickey owned the land at and prior to this date, upon which the debt evidenced by the note was a lien, she having inherited the one sixth thereof, and the other five sixths had been conveyed to her by her sisters, the other heirs.   We think it perfectly clear that an action could have been begun against her after the note became due, and while it was yet a lien upon this land, and if prosecuted to judgment such judgment would have continued the lien of that debt against the land.   Under the act of 1834, supra, such action may be commenced against the personal representative of the deceased or the heirs.   Mrs. Hickey was one of the heirs and having acquired the title of all of the other heirs, and the records of Bradford county showing this, it seems perfectly clear that the action to continue the lien of this debt could have been commenced against her alone.   It would have been an act of folly to have either raised an administrator or to have included all of the heirs of Adelia B. Dacy in such suit, because the only purpose was to continue the lien of the debt and the only person interested in the land, on which it was desired to continue the lien, was Elizabeth Dacy Hickey.   If such lien could have been continued by an adverse action against her, in our opinion, no reason exists why she could not come into court voluntarily and confess a judgment upon that note or debt, which would have the same effect as if it had been obtained by adverse proceeding.   We consider it settled and unquestioned law that if a man can be brought into court by adverse proceeding and judgment obtained against him, he may accomplish the same purpose, with the consent of the plaintiffs, by coming into court, voluntarily, and confessing judgment.   If this is so then there was never a moment of time from the date of the death of Delia B. Dacy, until the sheriff's sale on the judgment on the bond given with the mortgage, when the lien of the debt evidenced by the note was not valid and subsisting upon the land which produced the money in court.

There is no question raised in this case as to the validity and honesty of the debt evidenced by the note, and the confes-

sion of judgment by Elizabeth Dacy Hickey on January 2, 1894. There is no hint of fraud or collusion as to it. It was an honest debt which Mrs. Hickey had assumed and agreed to pay. Mrs. Noteware could have commenced an action against her on the date that she confessed judgment, to wit: January 2, 1894, and if prosecuted to judgment it would have continued the lien of that debt. By going into the prothonotary's office and confessing a judgment upon said note, or the debt evidenced by it, Mrs. Hickey rendered it unnecessary for Mrs. Noteware to bring an adverse suit. It should also be noted that Elizabeth Dacy Hickey continued to revive the said judgment, which she confessed, from time to time, so that it never lost its lien upon said land, and the lien was valid and subsisting at the date of the sheriff's sale.

It is not contended that the confession of judgment and the revivals thereof created any new lien upon the land in question, estate of Adelia B. Dacy. All that is claimed is that these proceedings continued the lien of the debt evidenced by the note. We have a long line of decisions to the effect that no new lien is created by a judgment obtained against the personal representative or heirs of a decedent, beginning with Duncan v. Clark, 7 Watts, 217. The learned counsel for the appellee cites and relies on Oliver's Appeal, 101 Pa. 299, and kindred cases in support of his contention that the lien of this debt could only be continued by an adverse proceeding begun within the period provided by the act of February 24, 1834; that no admission by heirs or personal representatives will dispense with the necessity of such statutory action or proceeding. But we have no contention with those cases; they do not apply where the heirs have confessed judgments. It is undoubtedly good law that loose or outside admissions by the heirs would not continue the lien of such debt. But when the note evidencing the debt is filed in the prothonotary's office, within the time prescribed by the act of 1834, and the lien thus kept alive until the heir appears and confesses a judgment thereon, within the time when said note still remains a lien and after it has become due, we can see no reason, and know of no authority, requiring us to hold that the lien of the debt was lost because the heir was not compelled by adverse proceeding to come into court. If there is a rule of law in Pennsylvania holding that a party who

is liable to be sued, and to a recovery of judgment against him cannot, with the consent of the plaintiff come into court and confess such judgment we do not know where to find it. Certainly such a rule would not seem to be in accordance with justice and common sense.

The only question raised in this appeal is whether the mortgagee of Elizabeth Hickey shall take the money realized by the sheriff's sale of the land, which was formerly of Adelia B. Dacy, or it shall go to the holder of said note against Adelia B. Dacy. The learned auditor and the court below awarded this money to the legal owner of the note and the debt evidenced by it, and in this we are not prepared to say there was error.

The assignments of error are all overruled, the decree of the court of common pleas affirmed and the appeal dismissed at the costs of the appellant.

BEAVER, J., dissents.